# Staunton

## H. J. Heinz Company v. W. B. Shafer, Incorporated.

September 8, 1948.

Record No. 3370.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

322

*Willcox, Cooke & Willcox* and *R. B. Spindle, III*, for the plaintiff in error.

*Venable, Miller, Parsons & Kyle*, for the defendant in error.

MILLER, J., delivered the opinion of the court.

This writ of error brings before us for review a jury's verdict and judgment thereon for $16,115.99, with interest from December 1, 1945, against H. J. Heinz Company, plain-

tiff in error, in favor of W. B. Shafer, Inc., defendant in error. The parties will be designated plaintiff and defendant according to the positions occupied by them respectively in the trial court.

The judgment represents damages sustained by plaintiff for alleged breach of contract, which resulted from rejection by defendant of twenty-three car loads of spinach shipped to it at Medina, New York, by plaintiff from Norfolk, Virginia.

The defendant asserts that the court erred in the following particulars:

1. Instruction P given at the instance of the plaintiff was erroneous and in conflict with other instructions.

2. Defendant's motion to set aside the verdict as contrary to the law and evidence should have been sustained.

At the very threshold of this case, before consideration of the errors assigned, it becomes necessary to determine what constitutes the record.

Several witnesses for both plaintiff and defendant testified in open court and numerous exhibits were introduced in evidence. The exhibits were not copied, but the testimony was transcribed and duly certified and authenticated by the trial judge in conformity with sec. 6253 of the Code of Virginia (Michie) 1942, and Rule 21 of this Court. The certificate of the trial judge likewise certifies the exhibits as original exhibits Nos. 1-42, inclusive.

In addition to the above testimony, the depositions of three witnesses on behalf of plaintiff were taken in the city of New York. They are included in a pamphlet of seventeen typewritten pages which was forwarded to the clerk of the lower court and by him marked, "Received under seal & filed 5/5/47, W. R. Hanckel, Clerk." This does not constitute a part of the *printed record* nor has it been certified as evidence under Rule 21. The pamphlet is treated as an original exhibit and marked for identification as "Ex. No. 5." The depositions of these three witnesses are mentioned in the printed record only twice. In the "Descriptive Index of Exhibits" the pamphlet is described—

"5. Depositions Taken in New York." Also, immediately after the opening statements of counsel, the record recites that Mr. Parsons, counsel for plaintiff, stated, "We will read you the deposition of Inspector John A. Cowell."

The witness Cowell was one of the three witnesses who gave their depositions in New York. The other two witnesses are not, in any manner, mentioned in the record or its index.

The seventeen pages of depositions are attempted to be made a part of the record and presented to this court as an exhibit. They are not authenticated under sec. 6253 of the Code or Rule 21 of this court as evidence but as an original exhibit.

There is actually no authentication upon this pamphlet, but it was enclosed, along with many other exhibits bearing their respective numbers, in a large unsealed manila envelope. Upon the envelope on which is written the number and style of the case, there appears the following authentication:

"By agreement of the parties by counsel, the court, in lieu of putting its initials on exhibits No. 1-42, inclusively, certifies that the exhibits in this folder are the original exhibits.

"Dated Sept. 9, 1947.

"Clyde H. Jacob
"Judge of the Circuit Court
"of the City of Norfolk, Va."

There is no statutory provision or rule of this court which allows depositions taken in a common law action to be authenticated and made a part of the record as an original exhibit.

A deposition in a common law action does not actually constitute evidence when it is received and filed by the clerk. It then becomes available to any party litigant and may be introduced in evidence upon the trial, but until that is done it has not become evidence to be considered by the judge and jury. Assuming that the depositions of all three witnesses were read, then to make them a part of

the record, it was necessary that they be treated as testimony and authenticated by the judge as was the other testimony heard in open court.

An attempt to make these seventeen pages of depositions an original exhibit is in plain violation of sec. 6357 of the Code which requires that the record be printed.

Sections 6252, 6253, and 6357 of the Code, and Rule 21 of this court clearly contemplate that testimony of witnesses in a common law action, whether taken in deposition form or in open court, shall be certified and authenticated as testimony and not as exhibits. Departure from this established course of procedure is not permitted. *Omohundro v. Palmer*, 158 Va. 693, 164 S. E. 541; *Ross Cutter, etc., Co. v. Rutherford*, 157 Va. 674, 161 S. E. 898; *Carr v. Commonwealth*, 175 Va. 608, 9 S. E. (2d) 287. An instructive discussion of this subject is found in the article by Ralph T. Catterall, "Practice in the Supreme Court of Appeals of Virginia", 33 Va. L. R. 220.

What has been said about exhibit No. 5 applies with equal force to exhibit No. 29. That consists of three pages of interrogatories and answers thereto designated "Exhibit No. 29", and noted thereon is, "Filed 5/29/47, W. R. Hanckel, Clerk."

We conclude that the depositions of the three witnesses designated as "Exhibit No. 5," and the interrogatories and answers designated "Exhibit No. 29", though certified in the certificate attached to the printed record, have not been treated or authenticated as "evidence" to be considered as such, and therefore, are not a part of the record. Not being original exhibits, agreement of counsel and consent of the court could not make them such.

It is also appropriate to say that the manner in which the other exhibits are identified and authenticated is unsatisfactory and not to be commended. It is stated that there were forty-two exhibits filed, including Exhibits Nos. 5 and 29. Though each is called an exhibit and numbered, they bear no further identification. By identification of these exhibits by number only, at the instance

of counsel, the trial judge undertook to refer to and authenticate all of them by his one signature upon the manila envelope in which they were contained.

We are aware that an exhibit such as a knife or pistol bullet, by its very nature, is difficult to identify and authenticate. With exhibits of that kind it may become necessary that they be placed in a container, cover or wrapper, and proper identification and authentication made thereon; but where written documents are filed as exhibits and numbered for identification, authentication by merely signing the wrapper or envelope in which they are contained is a practice not to be commended. That such should be disapproved is made evident by the result in this case. Upon careful examination, it is found that four of the exhibits, Nos. 6, 12, 19, and 42, have never been actually authenticated and certified to this court in any manner, or, if so, they have been lost from the manila envelope. No sufficient description of these four exhibits appears in the record to enable the court to know their contents. They, along with Exhibits Nos. 5 and 29, are not before us as a part of the record. The remaining thirty-six exhibits, though not satisfactorily identified and authenticated, will be considered.

This brings us to the assignments of error upon the record as it now exists.

The excluded depositions were offered in evidence on behalf of the plaintiff and the interrogatories were taken at the instance of defendant. The exclusion of this evidence and the missing exhibits do not impair the record for a determination of the first error assigned. The correctness of the ruling of the court upon the questions thereby presented is unaffected by the rejection of the depositions and interrogatories and absence of the four exhibits.

A brief statement of the evidence material to this assignment is necessary to an understanding and determination of the questions presented.

The defendant is engaged in the preparation and manufacture of canned foods. It was represented by its purchasing agent, A. G. Young, in the transaction that ulti-

mately resulted in this litigation. Plaintiff, a Norfolk corporation engaged in selling fresh produce, was represented by its president, W. B. Shafer.

In November, 1945, defendant desired to purchase large quantities of fresh spinach for canning. Several phone conversations ensued between Messrs. Young and Shafer relative to the purchase by defendant from plaintiff of twenty-four or twenty-five carloads of fresh spinach. As a result, plaintiff shipped a sample bushel of spinach to defendant at Pittsburgh, Pennsylvania.

Testimony on behalf of defendant is to the effect that before consummation of the contract and as a part thereof, it was made clear that the spinach must be free from insects and aphides.

In speaking of the conversation he had with Mr. Shafer prior to submission of the sample, Mr. Young testified as follows:

" * * * 'If I deal with you, the spinach will have to be free from insects and aphides.' I made that very emphatic. He said, 'I think we have very, very good spinach, and I will send you a bushel.' "

Mr. Young also testified that when the sample was received, upon careful inspection by him and F. R. Poole, an experienced inspector, it was found free of aphides. That it was free of aphides is likewise testified to by Inspector Poole. Mr. Young further says that the conversation which took place immediately following receipt of the sample was as follows:

"I called him and said, 'Mr. Shafer, the sample of spinach has reached us, and it has some dirt, but it hasn't any aphides.' I said I am ready to take it, but I want to caution you if you have spinach at Madina, which was purchased F. O. B. Norfolk, or wherever it is, we will have to refuse it because we don't take anything that is covered with insects when it is washed. Mr. Shafer hesitated. I have been dealing with him for years. He said, 'Mr. Young, I think I can ship better spinach than that.' He said, 'I have some better fields, and I can ship better spinach than

that.' I said, 'If you can ship better spinach than that free from aphides, go ahead and pick five cars of spinach.' "

In this connection, he also said that upon actually ordering shipment of the first five carloads on November 16, 1945, it was impressed upon Mr. Shafer that the spinach would be inspected by defendant and subject to its approval on arrival. This testimony was as follows:

"By Mr. Willcox:

"Q. You ordered five cars on the 16th?

"A. Yes.

"Q. What, if anything, did you say to him about the inspection on arrival?

"A. I told him that it was our procedure on everything that we buy, I don't care what it is, it is subject to H. J. Heinz inspection and approval on arrival. That is our inspection; it is no Government inspection. We are more particular than the Government is because we have to pack better stuff than the Government specifications."

Upon cross-examination, the following question and answer also appear:

"Didn't you tell him that if the spinach which came from Norfolk had no more aphides than the sample to ship?"

"A. No. I said if you can ship spinach as good as that and free of aphides, to go ahead."

The second order by telephone for shipment of fifteen cars was placed on November 17, 1945, and a few days later there was another order for shipment of four cars. These verbal orders were in each instance confirmed by written communications.

Several witnesses on behalf of defendant testified that the spinach in all but one of the twenty-four cars was infested with aphides. Upon inspection, twenty-three cars were rejected because of aphid infestation and plaintiff was so advised. A telegram and letter to that effect were dispatched on November 27, 1945, when the first five cars were rejected. Similar communications followed on receipt and inspection of other cars.

On the other hand, there is ample testimony on behalf

of plaintiff that the sample was of good quality, though actually infested to some extent with aphides. Mr. Shafer, in his letter to Mr. Young of November 15, 1945, says, in describing the sample: "As I told you on the phone this spinach we air expressed today is some of the best spinach in this section, but all of it has a few aphis which I think will wash off very easily as there are no sheds."

On that subject, he testified as follows:

"A. * * * Monday morning I went to packing a load of the spinach of the sample I sent to Mr. Young, and that was some infested, but no more than the sample I sent; but it showed it was right bad and there was no counting on it. We disregarded that all together.

&ast; &ast; &ast; &ast; &ast; &ast;

"I went back to the office and called Mr. Young and said, 'Mr. Young, I found some spinach that I think has less aphides than the sample I shipped you.' I knew there was much less because I didn't see one on that. I usually examine 15 or 20; I have been in this business 55 years.

"Q. Then you say all the spinach you shipped was as good or better than the sample you sent?

"A. It was all better than the sample I sent.

"Q. Did it have any aphides on it?

"A. It had less aphides than I have seen at that time of year.

"Q. Did you inspect it all?

"A. I inspected it all myself. I was not satisfied with that, and I got my brother to go with me to Mr. Hudgins' farm, and he went across one way and I went the other, and we opened up baskets and turned them over head up like that to see if we could find aphides, and we didn't find one; and he said he found one.

"Q. The spinach you sent was practically free from aphides?

"A. Yes. I have never seen grown here as pretty as that.

"Q. Insofar as aphides were concerned, that was better than the samples you sent?

"A. Much better than our sample."

Much of plaintiff's evidence went to establish that all of the shipments were of good quality and practically free from aphid infestation. Hence plaintiff contends that the rejection was arbitrary and wrongful.

Upon this conflicting evidence, the court gave Instruction P on behalf of the plaintiff and Instructions D-5 and D-10 at the instance of defendant. They are as follows:

Instruction P: "The Court instructs the jury that if you believe from the evidence that the sale of the spinach was made F. O. B. Norfolk, Virginia, and that the plaintiff secured and shipped spinach, conforming to a sample at Medina submitted, you should find for the plaintiff and award the plaintiff such damages and loss as has been shown by the evidence."

Instruction D-5: "You must find for the defendant as to each of the cars rejected by it, unless you believe from a preponderance of the evidence that such cars, when tendered to it by the railroad company for inspection at Medina, New York, conformed to the sample."

Instruction D-10: "If the jury believes from the evidence that Heinz, when ordering the cars of spinach from Shafer by phone, expressly told Shafer that it could not use any spinach infested with aphides or other insects; that Shafer, after being so told, accepted the order and agreed to ship the spinach in accordance therewith; and that Shafer selected the spinach to be shipped on said order, then it was the duty of Shafer to ship to Heinz spinach which was free of aphides, and other insects, and Shafer cannot recover either the invoice price or damages on account of any of the cars shipped unless the contents of such cars were free of such infestation on arrival at Medina, New York. The burden is on Shafer to prove by a preponderance of the evidence as to each of said cars that the contents thereof were free of such infestation on arrival at Medina, New York."

It is insisted by defendant that Instruction P is a finding instruction based upon a partial view of the evidence. By its terms, if the spinach conformed to the sample "at Medina submitted", verdict for the plaintiff was directed.

Defendant's theory of the case was that though it was necessary that the shipments measure up in all particulars to the sample, the contract also required that the spinach be free from aphides upon arrival and inspection at Medina. It contends that freedom from aphides was made a condition of the contract.

There was ample testimony given by Mr. Young upon which to base such a conclusion. It is now insisted that the court, by Instruction P, ignored that important evidence and merely imposed upon the plaintiff the burden of establishing that the spinach conformed to the sample. It is further pointed out that though the instruction states that it should conform to the sample, it rather indicates that whether or not it does so conform is to be determined at the place and time of shipment and not upon receipt and inspection in Medina, New York.

There is some evidence that aphides multiply rapidly and that the infestation might have increased while the cars were in transit.

■ Defendant's Instruction D-5 required that the spinach conform to the sample upon inspection at Medina. Instruction D-10 was of like effect. Both also recognized that there was credible evidence to establish that freedom from aphides was a condition to the contract. Recognition of that evidence was not allowed by Instruction P. It was a finding instruction that ignored important evidence which the jury was entitled to consider. It directed a verdict upon a partial view of the evidence, when it should have stated a complete case, including all elements necessary to sustain the verdict. *Powell* v. *Virginian Ry. Co.*, 187 Va. 384, 46 S. E. (2d) 429; *Outlaw* v. *Pearce*, 176 Va. 458, 11 S. E. (2d) 600; *Atlantic Co.* v. *Roberts*, 179 Va. 669, 20 S. E. (2d) 520; *Stevens* v. *Mirakian*, 177 Va. 123, 12 S. E. (2d) 780.

■ The further contention that Instruction P is susceptible of a construction that is in conflict with Instruction D-5 is well taken. Under its wording the jury may have concluded that the spinach was to conform to the sample when shipped at Norfolk. By D-5, it was required to

conform to the sample upon its inspection in Medina, New York. This conflict is upon a sufficiently material matter to have influenced the jury in the conclusions reached.

The effect of such conflict is stated thus in Thompson on Trials, Vol. 2, sec. 2326:

"The giving of instructions which are inconsistent with or contradictory to each other is error, for the reason that the jury will be as likely to follow the good as the bad, and it cannot be known which they have followed, and which way soever they go, if there is an appeal or writ of error, the judgment must be reversed. Therefore, an erroneous instruction is not cured by another instruction on the same subject which is correct, unless the former is by the latter specifically withdrawn."

Due to conflict in certain instructions and because one ignored material testimony but nevertheless directed a finding, a reversal was ordered in the very recent case of *Hamilton* v. *Glemming*, 187 Va. 309, at p. 314, 46 S. E. (2d) 438, in which Justice Spratley said:

"It is elementary that instructions should be founded on evidence. They should be clear, complete and without conflict. It is their object to define for the jury, and to direct their attention to, the legal principles which apply to and govern the facts which the evidence tends to prove."

Many cases on this subject are listed in the notes to sec. 263, Burks' Pleading and Practice, Third Edition, p. 470.

Under the second assignment of error, defendant asserts that (a) there is no evidence that any of the twenty-three cars of spinach conformed to the sample upon inspection at Medina, and (b) the record discloses that plaintiff, by the exercise of reasonable care and diligence, could have minimized the damage after being advised of rejection of the cars but failed to do so.

A careful scrutiny of the testimony and exhibits before us discloses conflict in the evidence on each of these matters. Hence there is no merit in defendant's contention.

There is a further and all-sufficient answer to this assignment of error which goes to the weight of the evi-

dence. Plaintiff in error left out of the record seventeen pages of testimony and three pages of interrogatories and answers and is thus not entitled to rely upon any assignment of error that involves a consideration of the weight of evidence.

For the foregoing reasons, the judgment is reversed and the case remanded.

*Reversed and remanded.*