## Richmond

MARVIN GARLAND REDD, AN INFANT, ETC. v. HOWARD WILBERT INGRAM, AN INFANT, ETC.

April 24, 1967.

Record No. 6396.

Present, All the Justices.

*William F. Stone* (*Joyce and Stone*, on brief), for the plaintiff in error.

G. *Warthen Downs* and *Martin F. Clark* (*Bareford and Downs*, on brief), for the defendant in error.

GORDON, J., delivered the opinion of the court.

Howard Wilbert Ingram sustained injuries when an automobile driven by Marvin Garland Redd, in which Ingram was riding as a guest-passenger, left the highway and turned over. Ingram brought this action against Redd to recover damages for his injuries. The jury returned an $8,500 verdict for Ingram, on which the trial court entered judgment. Redd asks us to award him a new trial because of the court's errors in granting Instruction E(1), relating to assumption of risk, and in admitting evidence concerning Ingram's reputation for truth and veracity.

We will outline the testimony brought forth on behalf of Redd relating to his defense that Ingram voluntarily assumed the risk of the accident. Ingram contradicted this evidence in almost all material particulars. Despite the jury verdict for Ingram, we must consider Redd's evidence in passing upon the correctness of Instruction E(1) on assumption of risk. Redd was entitled to a proper instruction on the issue of assumption of risk in the light of the testimony of his witnesses.

Ingram and Redd attended a dance in the Patrick Central School, near Stuart, on the night of January 10, 1965. After the dance Redd, who was driving his father's Chevrolet, agreed to drive Ingram to his (Redd's) home to spend the night.

Redd's brother Gary Redd (whom we will refer to as "Gary") testified about the events in the school yard after the dance. While Ingram was standing beside the Chevrolet in the school yard, "Garland [the defendant, Marvin Garland Redd, whom we will refer to as "Redd" or "Garland"] hollers out and says, 'Anybody wants to race, come on follow this Chevy . . .'" Gary "cautioned Garland then not to be showing off on my father's car. I [Gary] knew the expense of an accident". Garland "didn't pay any attention" to Gary's advice.

After Ingram got into the automobile, Garland "was racing the motor and everything". Gary said "Don't be showing off, Garland". "Garland turned around and hardheaded, went around the school in a reckless way, tailspinning and everything, came back in front of the school, and parked". Gary told Garland again "not to be showing off". Ingram, who was in the automobile, said nothing; he only

smiled. Garland then drove off, with Ingram sitting in the front seat. According to Gary, "Garland took off spinning and said, 'Come on, let's race' ".

Garland testified that he drove "fast, reckless" two or three miles on Route 8, and then stopped at Deatherage's Store. He said "I heard he [G. C. Smith, who left the school yard after Ingram and Redd] got a hot car. I want to see what he's got". Ingram made no protest, and he indicated no desire to get out of the automobile. After G. C. Smith came abreast of Redd's Chevrolet, they engaged in a race, resulting in the accident that caused Ingram's injuries.

■ Redd's counsel objected to Instruction E(1) because it permitted the jury to find that Ingram had assumed the risk only if he knew Redd intended to engage in a race. Counsel contended that Ingram assumed the risk if he "knew there was hazard in riding with the defendant [Redd], whether racing or otherwise". The Instruction reads:

## "INSTRUCTION NO. E(1)

"THE COURT INSTRUCTS THE JURY that if the defendant, Marvin Garland Redd, relies upon the defense of the assumption of risk, *that is to say*, that before leaving the school premises that the plaintiff, Howard Ingram, knew that it was the intention of the defendant, Garland Redd, to engage in a race and that he fully appreciated the hazard or danger involved in riding with the defendant under such circumstances and that the plaintiff, Howard Ingram, voluntarily exposed himself to such hazard or danger, then the burden is on the defendant, Marvin Garland Redd, to prove by a preponderance of the evidence that the plaintiff, Howard Ingram, knew that the defendant, Marvin Garland Redd, intended to engage in a race and that the plaintiff, Howard Ingram, fully appreciated the hazard or danger involved in riding with the defendant under such circumstances." [Emphasis supplied]

As pointed out by Fowler, *that is to say* (the English equivalent of *i.e.* or *id est*) "introduces another way (more comprehensible to the hearer, driving home the speaker's point better, or otherwise preferable) of putting what has been already said". *Fowler's Modern English Usage* (2d ed.) 263. As further pointed out by Fowler, *i.e.* or *that is to say* "does not introduce an example". *Id.*

So, by the language of Instruction E(1) following the words "that is to say", the court explained what it meant by "the defense of the as-

sumption of risk". And by such explanatory language the court told the jury that the defense of assumption of risk could be sustained only if Ingram knew Redd intended to engage in a race.

We agree with Redd's contention that the instruction was erroneous because it precluded the jury from finding that Ingram assumed the risk if it did not believe that Ingram knew Redd intended to engage in a race. Because the testimony about Redd's reckless driving in the school yard and on Route 8, before he stopped at Deatherage's Store, would have supported a finding that Ingram assumed the risk, the trial court should not have required the jury to believe Ingram knew that Redd intended to engage in a race as the *sine qua non* of a finding that Ingram assumed the risk. See *Arrington, Adm'r* v. *Graham, Adm'r*, 203 Va. 310, 124 S.E.2d 199 (1962), for a discussion of the doctrine of assumption of risk.

 The trial court gave another instruction, Instruction 2, advising the jury about the defense of assumption of risk in general terms.[1] Unlike Instruction E(1), Instruction 2 did not tell the jury that it could uphold Redd's defense only if Ingram knew that Redd intended to engage in a race. Ingram's counsel contend that any error in Instruction E(1) was cured by the granting of Instruction 2. But we cannot know whether the jury followed Instruction E(1) or Instruction 2. "[W]here the instructions are conflicting and inconsistent the jury will be as likely to follow the bad as the good, and it cannot be known which they have followed. *Heinz Company* v. *Shafer, Inc.*, 188 Va. 320, 334, 49 S.E.2d 298, 304. Hence, the giving of such conflicting and inconsistent instructions is error, unless it plainly appears from the record that the jury could not have been misled by them." *Gabbard* v. *Knight*, 202 Va. 40, 47, 116 S.E.2d 73, 78 (1960).

 By their second assignment of error, Redd's counsel challenge the trial court's admission of testimony about Ingram's reputation for truth and veracity.

---

[1] "INSTRUCTION NO. 2

"THE COURT INSTRUCTS THE JURY that one who voluntarily assumes the risk of injury from a known hazard or danger cannot recover for injuries received from such hazard or danger. And if you believe from a preponderance of the evidence in this case that the plaintiff, Howard Ingram, fully appreciated that there was hazard or danger involved in riding with the defendant, Garland Redd, as they left the school premises, and that the plaintiff voluntarily exposed himself to such hazards or danger and that he was injured as a result of such hazard or danger, then he cannot recover, even though you may believe that the defendant, Garland Redd, was grossly negligent."

The rule in Virginia was announced long ago in *George* v. *Pilcher*, 28 Gratt. (69 Va.) 299, 315 (1877):

"\* \* \* [W]e are of opinion, that whenever the character of a witness for truth is attacked either by direct evidence of want of truth, or by cross-examination, or by proof of contradictory statements in regard to the material facts, or by disproving by other witnesses material facts stated by him in his examination; or, in general, whenever his character for truth is impeached in any way known to the law, the party calling him may sustain him by evidence of his general reputation for truth \* \* \*."

See also *Miller* v. *Harless*, 153 Va. 228, 240-241, 149 S.E. 619, 623 (1929).

In this case, Redd's counsel attempted to impeach Ingram's character for truth by cross-examining Ingram and by introducing testimony to contradict Ingram. As examples: (1) Redd's counsel repeatedly asked Ingram on cross-examination whether he had heard Redd state his intention to race, after Ingram had denied hearing any such statement, and counsel introduced testimony to prove that Redd had made such a statement in Ingram's presence. (2) Redd's counsel introduced testimony to contradict Ingram's denial that he was in the automobile when Redd drove recklessly around the school. (3) Redd's counsel introduced testimony to contradict Ingram's statement that he had protested the manner in which Redd was driving and had asked Redd "to slow down and drive right". So Redd's counsel attempted to impeach the truth of Ingram's testimony respecting matters about which Ingram could not have been honestly mistaken. The rule laid down in the *Pilcher* case therefore permitted the introduction of testimony about Ingram's reputation for truth and veracity,[2] and the court did not abuse its discretion in admitting the testimony.

Because of the error in giving Instruction E(1), the case will be reversed and remanded for a new trial.

*Reversed and remanded.*

---

2 Redd's counsel in effect ask us to overrule the *Pilcher* case because the introduction of testimony in civil cases respecting reputation for truth and veracity would unduly prolong trials and result in overcrowded dockets. A trial judge can impose reasonable limitations, however, on the number of witnesses who will be permitted to give such testimony in any case.