# ANN DICKERSON LUCK

## V.

# WILLIAM T. MILLER

Record No. 900144

November 9, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ., and Harrison, Retired Justice

*W. W. Whitlock (John D. Whitlock,* on briefs), for appellant.
*Richard Cullen (William B. Tiller; McGuire, Woods, Battle & Boothe,* on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this case we must determine whether the trial court properly refused to admit testimony regarding the reputation for veracity of a witness and whether the evidence supported a jury instruction on a driver's duty to operate a vehicle at a "reasonable speed under the existing conditions."

Shortly after 6:00 p.m. on November 26, 1986, Ann Dickerson Luck was headed north in the inside lane of U.S. Route 1. William T. Miller, intending to head south on U.S. Route 1, entered the northbound lanes from a shopping center parking lot on the east side of Route 1 and successfully crossed two of the three northbound lanes. Luck struck the side of Miller's car as it was stopped or slowed in Luck's lane of travel. Miller was not injured.

On August 16, 1988, Luck filed a motion for judgment against Miller seeking damages for injuries she sustained in the 1986 accident. Miller denied that he was negligent and asserted that Luck was contributorily negligent. At trial, Luck testified that the speed limit was 45 miles per hour and that she was traveling no more than 35 miles per hour. Luck also admitted she had seen Miller as he was preparing to exit the parking lot and enter the northbound lanes of U.S. Route 1. The jury returned a verdict for Miller. The trial court denied Luck's motion to set aside the verdict and entered final judgment on the verdict.

On appeal, Luck complains that the trial court erred in refusing to admit testimony intended to show Luck's reputation for veracity after her character for truthfulness had been impeached. Additionally, the trial court erred, Luck asserts, in granting a jury instruction on a driver's duty to operate a motor vehicle at a "reasonable speed under the existing conditions" because there was no evidence she was traveling at an excessive speed. We consider these issues in order.

█ Evidence of a witness' general reputation for truthfulness has been allowed in this Commonwealth

whenever the character of a witness for truth is attacked either by direct evidence of want of truth, or by cross-examination, or by proof of contradictory statements in regard to the material facts, or by disproving by other witnesses material facts stated by him in his examination; or, in general, whenever his character for truth is impeached in any way known to the law . . . .

*George* v. *Pilcher*, 69 Va. (28 Gratt.) 299, 315 (1877). We reaffirmed this principle three years ago in *Adams* v. *Adams*, 233 Va. 422, 357 S.E.2d 491 (1987), but noted that the character of the witness must be relevant to the issues in the case and that evidence introduced merely to show that the person acted in keeping with that reputation on a particular occasion is inadmissible. *Id.* at 426-27, 357 S.E.2d at 493-94.

Miller contends that Luck's character was not put in issue in this case. He characterizes the testimony of his medical expert and the cross-examination of Luck herself as merely "clarifying the source of some of her injuries."

Luck counters that Miller put her character in issue through cross-examination and by introducing testimony to contradict her. Specifically, she complains that her credibility became an issue when Miller's testimony, that he saw no cars in the other two lanes, directly contradicted her testimony that traffic was in all three lanes. More importantly, Luck contends that the testimony of Miller's medical expert and Miller's cross-examination of Luck regarding her injuries and disabilities were solely designed to discredit her character trait for truthfulness. We agree.

Cross-examination of a witness often produces inconsistencies or other indicia that the event was not precisely as depicted by the witness on direct examination. Such inconsistencies or imperfect recollection can be attributed to a number of causes, including the passage of time or repeated recounting of the event. However, one's character for honesty and truthfulness is a pervasive trait and spans events beyond the case on trial.

█ A review of the record discloses that Miller's cross-examination of Luck was structured to secure statements that admitted or implied that Luck's injuries were the result of a 1985 accident at

a 7-Eleven store; that, in a previous suit, Luck withheld information from attorneys regarding her treating physicians and regarding the subsequent accident with Miller; and that Luck misrepresented the permanency of, and pain arising from, her injuries sustained in the previous accident. These matters are ones about which she could not have been "honestly mistaken," *Redd* v. *Ingram*, 207 Va. 939, 943, 154 S.E.2d 149, 153 (1967), go beyond the events of this case, and bring into question the character of Luck as to the trait of veracity.

■ The intent to impeach Luck's character and honesty through these questions was confirmed by Miller's counsel in closing argument:

I have never seen a case where the plaintiff has decided to tell people certain things and not tell other people other things.

. . . .

It seems to me that my view of the case is that she withheld information when it suited her, she told information when it suited her later on. It seems to me, ladies and gentlemen, that she was playing the system. And it is going to be up to you all to determine whether in Henrico County she's going to be able to get away with it.

. . . .

Was she forthcoming to those lawyers who were defending 7-Eleven or was she playing the system? . . . I submit that she was holding back in that case because in that case she didn't want them to know about this case. And in this case she didn't want us to know about the 7-Eleven case.

. . . .

Why wouldn't she, in the 7-Eleven case, just say "Well, I think you ought to know something. I have been in an automobile accident and I hurt my knee," . . . Why wouldn't she say that? . . . One, she didn't want them to know about it. She wanted to deceive them. Or two, there really wasn't a

problem that bad that she felt like she had to discuss with them.

. . . .

I submit that she wanted to play the system and try to get money from both of them and that that is just not fair.

The jury was instructed that it could consider whether any witness knowingly testified untruthfully as to any material fact and that it could disregard all or any of the testimony. In this case, because Luck's character for truthfulness was attacked, the trial court abused its discretion by refusing to allow Luck to offer rebuttal evidence as to her character for truthfulness.

While the foregoing error is sufficient to require reversal, Luck also complains that the evidence did not support a jury instruction that a driver has a duty to maintain a "reasonable speed under the existing conditions." Since the issue may arise again if the matter is retried and the evidence is similar, we address the issue. Luck asserts that the only evidence of speed consisted of her testimony that she was traveling 35 miles per hour in a 45 mile per hour speed zone. This, Luck contends, is insufficient to support a jury finding that her speed was unreasonable under the circumstances. We disagree.

The evidence showed that the weather was rainy. It was "dusky dark" and the accident occurred within one-tenth of a mile of a major intersection. Furthermore, Luck admitted that she saw Miller before he entered U.S. Route 1 but could not stop in time to avoid the collision. From this evidence, a jury reasonably could find that Luck exceeded a reasonable speed under the circumstances and, therefore, the instruction was properly granted.

For the reasons set out above, the judgment of the trial court will be reversed and the case remanded for a new trial consistent with this opinion.

*Reversed and remanded.*

RETIRED JUSTICE HARRISON, with whom JUSTICE COMPTON joins, concurring in part and dissenting in part.

I concur that the evidence was sufficient to support the instruction given on a driver's duty to operate a vehicle at a "reasonable speed under the existing conditions."

I disagree that the trial court erred in refusing to allow the plaintiff to introduce the testimony of her minister that her reputation for truth and veracity was good. There was nothing extraordinary in either the examination or cross-examination of the witnesses in this routine automobile accident case, except in their being tedious. They were searching, intense, and persistent, but in no sense vicious, abusive, overbearing, or overreaching.

This action by the plaintiff alleging a leg injury in an automobile accident which occurred in 1987 was brought at the same time she had pending another personal injury action against a 7-Eleven store for an accident that occurred in 1985 and which involved the same limb. She allegedly still suffered from, and was being treated for, her first injury some eighteen months after the second accident. For obvious reasons counsel for the defendant sought to establish these facts, to point out certain inconsistencies in her testimony and previous statements made by her, and otherwise to support his theory that her damages were in fact attributable to the 1985 accident and not the one with Miller. This was a perfectly legitimate exercise by counsel and should not be construed as an attack on her character. On the contrary, an incisive cross-examination is the most effective tool available in our judicial system to ferret out the truth in any case, and should not be chilled or unduly restrained.

In a great majority of automobile accident cases involving testimony of the drivers and their medical experts, the testimony offered by plaintiff and defendant is diametrically opposed. If character evidence is held permissible in this case, it will be construed as modifying or abrogating the long-standing rule in Virginia that evidence of a witness' character or reputation for truth and veracity is not admissible in civil cases, unless impeached or is a central issue of the case.

Further, here it clearly was not because of any vicious or improper cross-examination of the plaintiff or her doctor that her counsel sought to introduce evidence of her character. Before either Mrs. Luck or her medical expert testified and were cross-examined, he announced to the trial court that "Mrs. Luck would be our only witness other than Dr. Adelaar *and a character witness.*"

Later in the trial, counsel for the plaintiff made his argument for the introduction of a character witness as follows:

". . . whenever a witness, a party's testimony *has been attempted to be contradicted, that puts the character into issue,* and the Supreme Court has held *and it is done universally in my practice.*" [Emphasis added.]

The trial judge aptly responded:

"Then that would mean that a character witness would testify in every case for both the defendant and the plaintiff. I don't believe that is what the Supreme Court has said. If you are going to call a witness only to say that her reputation for truth and veracity is good, I'm not going to allow it."

The majority cites selective remarks made by counsel for the defendant in closing argument as evidencing his intent to impeach plaintiff's character and honesty. Evidently counsel for plaintiff did not then agree, for at no time during the argument did he voice any objection or make any exception to the cited remarks.

At the conclusion of all the evidence, plaintiff's only motion was for summary judgment on the question of liability, and for the issue of damages to be submitted to the jury. Pertinent also, the trial court's final order reflects only that "the plaintiff moved the court to set aside the verdict as being contrary to the law and evidence and on grounds that several instructions proffered by plaintiff were rejected by the court."

*Adams* v. *Adams,* 233 Va. 422, 357 S.E.2d 491 (1987), relied upon by the majority, involves an entirely different factual situation. There, the person whose integrity was involved was a decedent who had allegedly failed to comply with an oral agreement made by him prior to his death. Both the trial court and this Court held that the decedent's reputation was "right squarely put in issue in the case." 233 Va. at 426, 357 S.E.2d at 493. Further, *Adams* also involved Virginia's so-called "dead man's statute," Code § 8.01-397. We specifically adhered there to the general rule regarding the admissibility of character evidence and to the exception applied in *George* v. *Pilcher,* 69 Va. (28 Gratt.) 299 (1877); *Adams,* 233 Va. at 427-28, 357 S.E.2d at 494.

I find no abuse of discretion by the lower court and therefore would affirm its judgment.