# Staunton

RAY IRVING TOLSTON v. JOHN HILL REEVES.

September 10, 1958.

Record No. 4823.

Present, Eggleston, C.J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*John F. Rixey* (*Rixey & Rixey*, on brief) for the plaintiff in error.

*L. Charles Burlage (Jack Maness,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

■ John Hill Reeves was struck and injured by an automobile driven by Ray Irving Tolston. He brought this action for damages and recovered a verdict and judgment against Tolston for $8,500, which the latter seeks to have reversed because of the giving of three instructions which he claims were erroneous.

The accident happened on October 19, 1956, about 3 p.m., at or near the intersection of Eighteenth street with Church street, in the city of Norfolk. Church street runs north and south and is about 50 feet wide. Eighteenth street is about 30 feet wide, runs east and west and enters Church street from the west but does not cross it, resulting in a "T" intersection, the top representing Church street.

The defendant, Tolston, drove out of Eighteenth street and struck the plaintiff, Reeves, as the latter was crossing Church street, the place of his crossing being the chief point of dispute and material to the question of who had the right of way. Code § 46-244.* There was no obstruction to the view of either party at the intersection. There were no traffic signals or signs at the intersection and there was no marked crosswalk for pedestrians on Church street but there were sidewalks along both sides of both streets.

The testimony for the plaintiff was to the effect that he was crossing Church street from east to west within the intersection and within the projected lines of the sidewalk on the north side of Eighteenth street; that he had walked three-fourths of the way across Church street when defendant's car came into the intersection, struck him and knocked him 14 or 15 feet. Plaintiff said when he first saw the car it was right on him; but he also said it was 200 feet from the in-

---

* "§ 46-244. Right of way of pedestrians.—The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices.

"No pedestrian shall enter or cross an intersection regardless of approaching traffic.

"The drivers of vehicles entering, crossing or turning at intersections shall change their course, slow down or come to a complete stop if necessary to permit pedestrians to safely and expeditiously cross such intersections."

tersection when he first saw it, and again that it was 15 or 20 feet away when he saw it "coming busting around the corner." He did not remember anything that happened after the accident, he said.

The evidence for the defendant was to the effect that the accident did not happen in the intersection but approximately 25 feet north of it; that defendant's car stopped within two or three feet after striking plaintiff, and on the west side of Church street. The defendant said that before entering the intersection from Eighteenth street he stopped, looked left and right, saw no traffic approaching nor the plaintiff crossing and then pulled out; that his car was in second gear and going about 15 miles an hour when it struck plaintiff, who was about in the middle of Church street; that he did not see plaintiff until just before he struck him. He estimated that after he stopped at the intersection he traveled 60 or 70 feet before striking plaintiff.

The plaintiff told the police officer who investigated the accident and also the defendant, so they testified, that he was running across the street from behind parked cars when he was hit and that it was not defendant's fault. One of plaintiff's witnesses also testified that plaintiff made that statement.

Section 46-244 of the Code, *supra*, gave the right of way to plaintiff if he was crossing at the regular pedestrian crossing included in the prolongation of the lateral boundary lines of the sidewalk on the north side of Eighteenth street, and required the defendant in such event to change his course, slow down or stop if necessary to permit the plaintiff safely and expeditiously to cross the intersection. The plaintiff could not, however, cross regardless of approaching traffic, as the statute says. He was required to use reasonable care in crossing. If he was crossing beyond the intersection, reasonable care required that he exercise a greater degree of vigilance than if crossing at the intersection. *Manhattan, etc., Corp.* v. *Williams*, 191 Va. 489, 492, 62 S. E. 2d 10, 12; *Hooker* v. *Hancock*, 188 Va. 345, 357, 49 S. E. 2d 711, 716.

The main conflict in the evidence was whether the plaintiff was crossing at the intersection or beyond it. It was important, therefore, that the jury be accurately instructed as to the rights and duties of the plaintiff as related to the place where he was crossing.

On motion of the plaintiff the court gave to the jury Instruction P-3, as follows:

"The Court instructs the jury that the pedestrian's right of way

extends from one side of the street to the other. It does not begin at any point in the intersection or does it end at any particular point. It begins on one side of the street and extends until the pedestrian has negotiated the crossing."

The defendant objected to this instruction on the ground that it did not clearly point out "the difference between crossing at an intersection and crossing not at an intersection. The instruction refers only to crossing a street, and is improper law as to a pedestrian crossing out of the crosswalks."

This instruction was an incorrect statement of the law. It is in the language of a sentence in the opinion in *Lucas* v. *Craft*, 161 Va. 228, 235, 170 S. E. 836, 838, but that sentence is immediately preceded by a sentence which begins with the words "At intersecting streets" and makes it clear that the rule stated applies only at intersections. See also *Bethea* v. *Virginia Elec., etc. Co.*, 183 Va. 873, 879, 33 S. E. 2d 651, 653. Instruction P-3 in its first sentence states flatly that the pedestrian's (plaintiff's) right of way extends from one side of the street to the other. The second sentence says that it does not begin at any point in the intersection or end at any particular point. That sentence is of uncertain meaning. If it meant that the right of way covered any point in the intersection, it was wrong because the statute limits the right of way to the space within the prolongated lateral lines. The jury could have taken it to the mean that the right of way was not confined to the intersection. The next sentence is even broader and states that it (the pedestrian's right of way) begins on one side of the street and extends until he has negotiated the crossing. The jury could have taken this instruction to mean that the plaintiff had the right of way whether he was crossing within the intersection or beyond it, and thereby could have applied to his conduct as well as to the defendant's the wrong standard of care.

█ Touching the question of the rights and duties of the parties the court gave also Instruction X, as follows:

"The court instructs the jury that pedestrians shall cross a street at an intersection in that portion thereof which is included in the prolongation of the lateral boundary lines of the adjacent sidewalk. A pedestrian crossing at such point has the right of way, elsewhere a vehicle has the right of way."

The court also told the jury in Instruction D-2 that pedestrians are required not to interfere carelessly with the orderly passage of vehicles and to cross streets whenever possible only at intersections;

and in Instruction D-7, that a pedestrian who crosses a street between intersections is required to exercise a greater degree of vigilance and care than when he crosses at an intersection because a vehicle has a superior right between intersections.

The appellee argues that Instruction P-3 was not erroneous but if it was that the error was cured by these other instructions.

Instructions must be read in the light of the evidence applicable to the issues raised. They must be read as a whole, and a defect in one may be cured by a correct statement of the law in another if it plainly appears that the jury could not have been misled by the defective instruction. Burks Pl. & Pr., 4 ed., § 287 at pp. 524-5 and cases cited in notes 17-18.

In *Tri-State Coach Corp.* v. *Walsh*, 188 Va. 299, 310, 49 S. E. 2d 363, 368, we said that "an error not amounting to a positive misstatement of law can be cured by a clear, definite and correct statement upon the same subject in another instruction." The evidence in that case did not warrant the awarding of punitive damages against the defendant corporation, and the jury was specifically so instructed. However, an instruction was given which could have been construed as permitting such damages and which, standing unqualified, might well have been misleading, but we found that it was "made certain by the amount of the verdict that the jury was not misled."

On the other hand, in *Heinz Co.* v. *Shafer*, 188 Va. 320, 334, 49 S. E. 2d 298, 304, we found that the conflict in the instructions was "upon a sufficiently material matter to have influenced the jury in the conclusions reached," and we quoted from 2 Thompson on Trials, § 2326, to the effect that the reason for holding inconsistent or contradictory instructions to be error is that the jury is as likely to follow the good as the bad, and it cannot be known which it has followed.

Instruction P-3 incorrectly stated the rights of the plaintiff, was inconsistent with and contradictory of his duty and rights as stated correctly in Instruction X, and we are unable to say that it plainly appears from this record that the jury could not have been misled by it. Nobody but the jury can know whether they were or not. The evidence presented a case in which the pedestrian was struck by a car at or near a street intersection. The intersection was open and unobstructed, yet the pedestrian did not see the car and the driver of the car did not see the pedestrian until just before the collision. The accident was due to negligence and the task of the jury was to

determine whether it was the negligence of the driver or of the pedestrian, or of both. The question of who had the right of way was a critical point in the inquiry because it affected the degree of care required of the parties. The plaintiff had the right of way if he was in the place assigned to him by the statute, and his evidence was to the effect that he was in that place. The evidence for the defendant was that he was not there, but was crossing at a place where the automobile had the right of way. The jury's problem was to decide which was correct.

When the jury read plaintiff's Instruction P-2 they found that it stated that at an intersection the operator of a vehicle must exercise a greater and higher degree of care than required of a pedestrian because the pedestrian has a superior right there. When the jury read Instruction P-3 they found it stated that the pedestrian's right of way extended from one side of the street to the other, did not begin at any point in the intersection or end at any particular point, but began on one side of the street and extended until he had negotiated the crossing.

From reading these two instructions the jury could have believed that this pedestrian, whether he was crossing within the intersection or 25 feet beyond it, enjoyed the special favor of the law and had a right to cross the street without exercising the degree of vigilance required of the driver. If so, we cannot say that it is plain that such belief was dispelled by Instruction X and the others referred to. Neither the evidence nor the verdict makes that plain. The evidence was conflicting and it cannot be said with certainty that the jury settled the conflict by applying the rule stated in Instruction X rather than that stated in Instruction P-3.

■ Defendant also assigned error to the giving of Instruction P-1 and Instruction P-5.

There is no merit in the assignment with respect to P-1. That instruction simply stated the mathematical proposition that a vehicle traveling at 15 miles an hour (at which the defendant estimated his speed at the time of the collision) would travel 22 feet per second.

Instruction P-5 told the jury that a pedestrian is not bound as a matter of law to be continuously looking or listening to ascertain if automobiles or other vehicles are approaching on penalty that if he fails to do so he is guilty of contributory negligence, but he must continue to use reasonable and ordinary care for his own safety. That instruction, if given at all, should have been qualified by stating

the condition which preceded the statement of the principle in *Sawyer* v. *Blankenship*, 160 Va. 651, 657, 169 S. E. 551, 553; *i.e.*, if from the circumstances he could reasonably believe that he could cross in safety and that there was no car sufficiently near to put him on notice of approaching danger. It was not a proper instruction under the evidence in this case.

It is elementary, as said by Mr. Justice Spratley in *Hamilton* v. *Glemming*, 187 Va. 309, 314, 46 S. E. 2d 438, 441, "that instructions should be founded on the evidence. They should be clear, complete, and without conflict. It is their object to define for the jury, and to direct their attention to, the legal principles which apply to and govern the facts which the evidence tends to prove."

The judgment appealed from is reversed, the verdict of the jury is set aside and the case is remanded for a new trial.

*Reversed and remanded.*