# Richmond

ALFRED R. BROWN v. ELLIS PRICE ARTHUR.

April 24, 1961.

Record No. 5207.

Present, All the Justices.

The opinion states the case.

*James S. Easley* and *James E. Edmunds* (*Easley and Vaughan*, on brief), for the plaintiff in error.

*Earle Garrett* and *W. Carrington Thompson* (*Garrett and Garrett*, on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Alfred R. Brown, hereinafter referred to as the plaintiff, instituted an action at law against Ellis Price Arthur, hereinafter referred to as the defendant, to recover damages for personal injuries sustained when he (Brown), while walking across Main street in the town of Halifax, was struck by a truck operated by the defendant, Arthur. There was a jury trial which resulted in a verdict and judgment for the defendant and we granted the plaintiff a writ of error. In his assignments of error the plaintiff contends that the verdict and judgment are contrary to the law and the evidence and that the lower court erred in its rulings on the instructions.

The factual background is not in dispute. The accident occurred in the afternoon of February 18, 1959, when the weather was clear and the visibility good. The plaintiff was walking from the western to the eastern side of Main street, between intersections, in the business district of the town and the truck was being driven northwardly along that street. Main street runs north and south and in the block in which the accident occurred is intersected on the north by Highway No. 360 and on the south by Edmunds boulevard. Both of these latter streets intersect the western side of Main street but do not cross that street, thus resulting in a "T" intersection at each end of the block. There are no traffic lights or signals at these inter-

sections; nor are there any marked crosswalks there, or elsewhere, indicating where pedestrians should cross Main street.

The entire western side of Main street between these intersections is occupied by the courthouse and lawn. The opposite or eastern side of the street is occupied by various stores and business establishments. Main street is 54 feet wide from curb to curb, is paved, and at the time of the accident the center line of the street was marked on the pavement. On each side of the street there are spaces 7 feet wide marked for the parking of vehicles parallel with the curb, thus leaving 40 feet for passing traffic.

Just before the accident the plaintiff had been riding as a passenger in a car which had been parked on the western side of Main street, near the middle of the block and in front of the courthouse. The plaintiff got out of the car through the left rear door and started across the street to Anderson's grocery store located near the middle of the block on the eastern side of the street. When he had gotten within a few feet of the parking space line on the eastern side of the street, he was struck by the right front fender of the defendant's truck which was proceeding northwardly along the street and turning into a parking space near the grocery store. The defendant, Arthur, had previously attempted to park in a space to the south but after realizing that he was improperly parked there, backed his truck out of the space and proceeded slowly, as all of the witnesses said, northwardly to seek another parking space near the store which he intended to visit. While making a right turn into this latter space the collision occurred.

The defendant admitted after the accident, and testified at the trial, that he did not see the plaintiff before the collision and was unaware that his truck had hit him until after he had been so advised by bystanders.

While the plaintiff and several witnesses on his behalf testified that he was going straight across the street, another eyewitness to the accident, James A. Guthrie, the driver of a taxicab parked near the scene, testifying for the plaintiff, said that the plaintiff crossed the street on "kind of a bias," or "at an angle."

Testifying on his own behalf, the plaintiff said that after he had gotten out of the car he stood at its left side and waited for two cars going in opposite directions to pass. After these cars had passed, he looked both ways and started across the street. When he reached the center of the street he saw the truck back from its first parking

position and come up the street. To use his own words, "I seed this truck coming up the street." At that time, he said, it was about 25 feet away from him. Thinking that he had time to get across in front of it, he said that he "rushed" across the street and was struck by the vehicle. He repeatedly said that he saw the truck at all times until just before it "whipped in behind" him and struck him.

Guthrie, the taxicab driver, testified that as the plaintiff crossed the street the truck was "in plain view." Indeed, he said, "If either one of them had looked they could have seen the other." All of the witnesses agree that after the truck left its first parking position it proceeded at a slow rate of speed until the impact occurred.

The defendant's own admission and testimony that he failed to see this pedestrian under the stated circumstances clearly convict him of negligence and his counsel so concedes. But it is equally clear that under the related evidence and particularly the testimony of the plaintiff himself, the jury were fully warranted in finding that he was guilty of contributory negligence. As has been said, he clearly testified that at all times he saw the truck before attempting to cross in front of it. He saw it back from the first parking position, saw it proceeding toward his intended path, and when it was approximately 25 feet from him, instead of stopping or waiting for the vehicle to pass, he attempted to outrun it, miscalculated its movement, and was struck. The fact that he had almost cleared the traveled portion of the street and had almost reached a point of safety does not mitigate his prior negligence. Whether, under these circumstances, the plaintiff was guilty of contributory negligence as a matter of law we do not have to decide, but certainly there was ample evidence to warrant the jury in deciding that he was.

■ Complaint is made that the lower court improperly granted Instruction B-1 which reads as follows:

"The court instructs the jury that a pedestrian has a right to cross a street between intersections, if he elects to do so, rather than go to the regular crossings; that if the pedestrian chooses to cross the street between intersections, he is required to use greater care for his own safety than when he crosses at the place provided for pedestrians, as vehicles have the right of way, except at intersecting streets. But the court further instructs the jury that the rule by which to determine whether a pedestrian crossing a street between intersections has exercised the greater care required in such case is the rule of ordinary care, that is to say, has he used the care which an ordinarily

prudent person would use in the same place and under the same conditions."

Counsel for the plaintiff objected to the instruction "on the ground that it is misleading and on the ground that there are no intersections located in the town or area where he could cross, and that the instruction is inapplicable to the facts of the case; it is contrary to the evidence also."

In his brief the plaintiff argues that this instruction is based on Code, § 46.1-230, which requires pedestrians when crossing highways or streets to "cross wherever possible only at intersections;" that this statute was not applicable because, he says, near the scene of the accident there are no such "intersections" within the meaning of this section, and no marked crosswalks for the use of pedestrians. There is no merit in this contention. Code, § 46.1-1, Subsection 11, defines an intersection as, "The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles travelling upon different highways joining at any other angle may come in conflict." Clearly, the "T" intersection at each end of the block comes within this definition.

In *Mapp* v. *Holland*, 138 Va. 519, 524, 122 S. E. 430, 37 A. L. R. 478, we held that roads which meet but do not cross are "intersecting roads" within the meaning of the former statute. See also, *Hendricks* v. *Virginia Electric & Power Co.*, 161 Va. 793, 797, 172 S. E. 160. This is in accord with the weight of authority from other jurisdictions that the meeting of two streets at an angle, although one stops at and does not cross the other, constitutes an "intersection" within the meaning of such traffic statutes. See 60 C. J. S., Motor Vehicles, § 351-a, pp. 833, 834; 5-A Am. Jür., Automobiles and Highway Traffic, § 277, pp. 398, 399; Annotation, 53 A. L. R. 2d 861.

The fact that there are no marked crosswalks at the intersections does not qualify the duty of pedestrians to cross there as required by Code, § 46.1-230.

It is further argued in the plaintiff's brief that Instruction B-1 is erroneous in that it states that "vehicles have the right of way, except at intersecting streets," over pedestrians. The defendant replies that this language in the instruction was approved in *Green* v. *Ruffin*, 141 Va. 628, 125 S. E. 742. But that case involved an instruction interpreting a city ordinance which, as the opinion points out,

expressly provided that "vehicles shall have the right of way over pedestrians between intersections." 141 Va., at page 637. There is no such ordinance or statutory provision involved in the present case.

As we have several times pointed out, a motorist or pedestrian, in traveling along a portion of a highway prescribed for the use of each of them, has no right of way over the other except as is provided by statute. In the absence of such a statutory provision, the rights of motorists and pedestrians are equal and their duties are mutual and reciprocal. *South Hill Motor Co.* v. *Gordon,* 172 Va. 193, 203, 200 S. E. 637, 642; *Rhoades* v. *Meadows,* 189 Va. 558, 562, 54 S. E. 2d 123, 124; *Conrad* v. *Thompson,* 195 Va. 714, 719, 80 S. E. 2d 561, 565. While each must exercise reasonable care, if a pedestrian is crossing between intersections reasonable care requires that he exercise a greater degree of vigilance than if crossing at the intersection. *Tolston* v. *Reeves,* 200 Va. 179, 181, 104 S. E. 2d 754, 756, and cases there cited.

■ Consequently, the plaintiff's criticism of the "right of way" provision in the instruction is well taken. But since no such objection was made in the lower court it cannot be availed of here. Rule 1:8.

■ The final contention of the plaintiff is that the lower court improperly granted Instruction "E" which reads as follows:

"The court instructs the jury that it is the duty of a pedestrian crossing a street to cross the street only at right angles. That if a pedestrian crosses a street diagonally, this is negligence on the part of the pedestrian; that if you believe from a preponderance of the evidence that Alfred R. Brown crossed Main Street diagonally, then this was negligence on the part of Alfred R. Brown. That if you believe from the preponderance of the evidence that Alfred R. Brown was guilty of such negligence and that this negligence proximately contributed to the happening of the accident and resulting injury, then such negligence bars any recovery by the plaintiff, Alfred R. Brown."

In the lower court the plaintiff objected to the instruction on the ground that there was no "competent evidence" that he crossed the street "diagonally" or otherwise than "approximately at right angles;" and that it improperly told the jury that "the crossing of a street by a pedestrian * * * diagonally" constituted negligence.

This instruction is based upon Code, § 46.1-230, which requires

that pedestrians shall cross highways or streets "only at right angles." The plaintiff argues that since he and five other witnesses testified that he walked "straight across the street," and only one witness, Guthrie, the taxicab driver, testified to the contrary, there was insufficient evidence of probative value to present to the jury the issue of whether he had crossed the street in violation of the terms of the statute.

There is no substance to this contention. Guthrie was a disinterested witness called by the plaintiff. He testified that his cab was parked just to the rear of the car from which the plaintiff had alighted. He had a clear and unobstructed view of the accident and related in considerable detail just how it occurred. He testified clearly and positively that he saw Brown start across the street on "kind of a bias," that is, he said, "instead of going straight across here [indicating], he went kind of—west up this way [indicating]," and was crossing "at an angle." The fact that a greater number of witnesses testified to the contrary did not deprive Guthrie's testimony of probative value. The jury had the right to accept either version.

The instruction properly told the jury that if a pedestrian crosses a street diagonally, that is, in violation of the terms of the statute, it constitutes negligence. It also properly left to their determination whether such negligence, if any, "proximately contributed to the happening of the accident."

On the whole we find no reversible error in the record and the judgment is

*Affirmed.*