# Richmond

### JESSIE H. DUNN, ET AL. v. ETHELYN R. STRONG, INDIVIDUALLY, ETC., ET AL.

September 5, 1975.

Record No. 740877.

Present, Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*Howard I. Legum* (*Fine, Fine, Legum & Fine*, on brief), for appellants.

*Stanley E. Sacks* (*Sacks, Sacks & Tavss*, on brief), for appellees.

HARRISON, J., delivered the opinion of the court.

The issue here is whether a paper writing admitted to probate, dated February 14, 1973, was the last will and testament of Willow D. Knight, deceased. Jessie H. Dunn and Arthur Ratcliff,[1] complainants below, alleged that the decedent was not competent to execute a will; that she was unduly influenced by her niece, Ethelyn R. Strong, in executing the instrument; and that at the time the instrument was signed the decedent thought she was executing a power of attorney. Complainants appealed an adverse verdict by a jury, and we limited the appeal to a consideration of three instructions granted on behalf of appellees.[2]

Willow D. Knight, age 85 and totally blind, died in the Maryview Hospital in Portsmouth on April 10, 1973, the day following her admission. Her condition was diagnosed as cerebral thrombosis, senility, arthritis, rheumatoid arthritis of the right knee and bilateral blindness. She had previously been hospitalized from March 15, 1973 to March 31, 1973.

On October 6, 1963, Mrs. Knight executed a will in which she named a Portsmouth attorney as her executor and devised her estate to her husband and to appellants, her brother and sister. The husband, James Edward Knight, died on January 19, 1973.

On January 28, 1973, certain of Mrs. Knight's papers, including certificates evidencing decedent's bank accounts in three different banks, were delivered to Mrs. Strong. On February 6 and 8, 1973, these accounts were changed to joint accounts in decedent's name and that of Ethelyn R. Strong, with right of survivorship. Formerly the accounts were in the names of decedent and her husband and appellants. These accounts totaled $16,596.57. The transfer of funds was arranged by Mrs. Strong who claimed the accounts were given to her by Mrs. Knight. Mrs. Knight signed all withdrawal cards by mark.

Mrs. Knight executed the instrument under attack on February 14, 1973. She named the niece, Mrs. Strong, as executrix, made $1,000 bequests to a great-nephew, William Ratcliffe, and a friend, Mrs. Flossie Smith, and devised the residue of her estate to Mrs. Strong and to Mrs. Strong's brothers, Arlester R. Ratcliff, Jr. and Joseph W. C. Ratcliff, in equal shares. There was testimony that Mrs. Knight thought she was signing a power of attorney for Mrs. Strong to "attend to her business", rather than a will.

---

[1] Arthur Ratcliff died on September 23, 1973, and Phenetha L. Harden, his administratrix, was substituted as a party complainant in his place.

[2] The appellees are the beneficiaries named in the February 14, 1973 instrument.

Mrs. Strong, age 56, is well educated, holds a Ph. D. degree and is a professor at Norfolk State College. She visited her aunt, Mrs. Knight, only three times during the five-year period immediately prior to January 19, 1973. After Mr. Knight's death she visited Mrs. Knight daily. Appellants allege that by January, 1973, Mrs. Knight was incompetent, senile, blind, feeble, hallucinating and afflicted with numerous disabilities. They point to the close relationship and affection between them and the decedent, in contrast, they say, to Mrs. Strong's indifferent treatment of Mrs. Knight prior to the husband's death. The contention of appellants is that Mrs. Strong took advantage of her kinship, prestige and superior education, and of her aunt's afflictions, infirmities and incompetence. They argue that by exerting undue influence Mrs. Strong obtained the transfer of the bank accounts and the execution of the February 14, 1973 instrument. Mrs. Knight owned rental property and received a pension from the Seaboard Railroad Company, and appellants claim that no reason existed for her savings accounts to have been changed or disturbed by Mrs. Strong.

For the reason that there may be a retrial of this case, and the testimony may be different at a second trial, we do not comment further on the evidence. We do conclude from the record before us that the trial court was correct in submitting to the jury the three issues framed by the pleadings, and upon which supporting evidence was introduced by appellants. We further observe that the case is very close upon the facts and is one peculiarly for a jury. As was said in *Virginia Ry. & P. Co. v. Burr*, 145 Va. 338, 348, 133 S. E. 776, 779 (1926), "It is a case, therefore, in which the instructions should have been most carefully drawn. . .".

Over the objection of counsel for appellants, the court granted Instruction 10, which reads as follows:

"The Court instructs the Jury that before the Will of Willow D. Knight, Deceased, dated February 14, 1973, can be declared invalid, the burden rests upon the plaintiffs, Jessie H. Dunn and the Administrator of the Estate of Arthur Ratcliff, deceased, to prove by a preponderance of the evidence that Willow D. Knight was deprived of her volition to dispose of her property as she wished. And, further, the plaintiffs must prove by a preponderance of the evidence that the defendant, Ethelyn R. Strong, committed such acts that thus manifested irresistible coercion which controlled and

directed Willow D. Knight to leave her estate as she did in the Will of February 14, 1973."

Appellants' exception to this instruction is that it omits two elements in the case—the decedent's mental incapacity and her belief that she was signing a power of attorney and not a will.

"It is well settled under our practice that a finding instruction 'must state a complete case and embrace all elements necessary to support a verdict.' [Citations omitted]." *Outlaw* v. *Pearce*, 176 Va. 458, 469, 11 S. E. 2d 600, 605 (1940). And in *Thomas* v. *Snow*, 162 Va. 654, 662, 174 S. E. 837, 840 (1934), we said:

> "When an instruction attempts to define the duty which defendant owes to plaintiff the duty should be set forth with reasonable clearness, and if it is so framed as to be calculated to confuse or mislead the jury, as in this case, it is prejudicial error. [Citing numerous authorities]"

A finding instruction is defined in Burks Pleading and Practice 535 (4th ed. 1952), as follows:

> "An instruction which concludes with a direction to the jury to 'find for the plaintiff' or 'find for the defendant,' as the case may be, should state a complete case, and embrace all elements necessary to support a verdict. It should also be based upon the evidence in the case, and not be partial, nor omit all reference to material evidence in the case. . . ."

While Instruction 10 does not contain the word "find", it is nevertheless a finding instruction. It unequivocally told the jury that it could not declare the will invalid unless those who were contesting it proved by a preponderance of the evidence that Mrs. Knight had been deprived of her volition by undue influence and coercion on the part of Mrs. Strong.

The sole issue in this case is the validity of the instrument as a will. Appellants say the instrument can be declared invalid on any one of three grounds, and they introduced evidence accordingly. However, Instruction 10 ignored two of the three issues that were submitted to the jury. The first line of the instruction contains a clear, plain and unmistakable direction to the jury that "before the will . . . can be

declared invalid. . .". This is but another way of saying "before you shall find the will . . . to be invalid", or "before the jury shall declare the will to be invalid", or "before you shall find for the contestants". The jury could have concluded from this instruction that before it could declare the will invalid *on any ground* it would have to believe the allegations of misconduct on the part of Mrs. Strong and that such acts deprived Mrs. Knight of her volition.

The instruction is erroneous in several respects. Mrs. Knight could have been mentally incompetent prior to the time she executed her will in 1973, during the period when she had little or no contact with Mrs. Strong. If the evidence established that the testatrix was mentally incompetent on February 14, 1973, the jury should have declared the instrument invalid without regard to any evidence of undue influence by Mrs. Strong.

Further, if the evidence established that Mrs. Knight intended to execute a power of attorney and not a will, the instrument is invalid as a will, and the jury should have so found, even though it may not have found any credible evidence of undue influence on the part of Mrs. Strong.

The importance of this instruction becomes obvious when we consider that the case revolved around the conduct of Mrs. Strong following the death of the decedent's husband. Obviously Mrs. Strong has achieved a position of responsibility and respect in the community in which she lives and works. The jury may have concluded that she did not commit acts which constituted coercion within the contemplation of the law. At the same time the jury may have also concluded that Mrs. Knight was mentally incompetent or executed the will through mistake, but did not so find because of the directions to it in Instruction 10.

While some instructions granted by the trial court correctly state the law applicable to the case, the vice of Instruction 10 is not cured for we cannot say that the jury followed the correct instructions and ignored the direction given to it in this instruction. It has been repeatedly held that "the giving of such conflicting and inconsistent instructions is error, unless it plainly appears from the record that the jury could not have been misled by them". *Gabbard* v. *Knight*, 202 Va. 40, 47, 116 S. E. 2d 73, 78 (1960). *See also Redd* v. *Ingram*, 207 Va. 939, 154 S. E. 2d 149 (1967); *Tolston* v. *Reeves*, 200 Va. 179, 104 S. E. 2d 754 (1958); *Heinz Co.* v. *Shafer*, 188 Va. 320, 49 S. E. 2d 298 (1948).

In *Breeding, Adm'r* v. *Johnson,* 208 Va. 652, 659, 159 S. E. 2d 836, 842 (1968), it is said:

"In Virginia the general rule is that:

" 'Error will be presumed prejudicial unless it plainly appears that it could not have affected the result. A plaintiff in error must always show, not only error in the rulings of the trial court, but also error of a substantial nature. When once he has pointed out an error of a substantial character, he is entitled to have it corrected if it appears from the record that there is reasonable probability that it did him any harm. There is no presumption that error is harmless.' 1B Mich. Jur. *Appeal and Error* § 293, p. 426. See *Spence* v. *Miller,* 197 Va. 477, 482, 90 S. E. 2d 131, 135; *Joyner* v. *Commonwealth,* 192 Va. 471, 477, 65 S. E. 2d 555, 558."

The evidence in this case is in sharp conflict, and we cannot say that it plainly appears from the record that the jury could not have been misled.

Appellants further excepted to the action of the trial court in granting Instruction 9, which reads:

"The Court instructs the Jury that 'undue influence' which is sufficient to void a Will must amount to force and coercion, destroying free agency.

"Mere resistible persuasion, solicitation, advice, suggestions, and importunity do not constitute 'undue influence'.

"Therefore, even if you should believe from the evidence that there was advice, suggestions, persuasions or solicitations on the part of Ethelyn R. Strong, you cannot find from any such evidence alone that there was 'undue influence'."

The court granted numerous instructions on undue influence, and the jury was fully instructed on the issue. While we do not hold that the granting of this instruction constitutes reversible error, we observe that the first paragraph of the instruction is similar to instructions found in *Green* v. *Green's Ex'rs,* 150 Va. 452, 462, 143 S. E. 683, 686 (1928), and in *Wallen* v. *Wallen,* 107 Va. 131, 134, 57 S.E. 596, 599 (1907), but without other language incorporated in the instructions from which it was patterned. In the instant case Mrs. Strong denied any act on her part to influence the execution of the instrument by

Mrs. Knight, and there is no evidence of the use of "force". In the granting of an instruction similar to Instruction 9, care should be exercised that the jury is not led to believe from any language in the instruction that to constitute undue influence a form of physical force or physical restraint must be used.

Appellants also question the action of the trial court in granting Instruction 7, which reads:

"The Court instructs the Jury that the evidence of physicians on the question of mental capacity, especially those who attended Willow D. Knight at the time of her last illness is entitled to great weight."

We agree with appellants that this instruction is neither a complete instruction nor a correct statement of the law. In *Eason v. Eason*, 203 Va. 246, 255, 123 S. E. 2d 361, 368 (1962), we approved an instruction which told the jury:

" 'The Court instructs the jury that the evidence of physicians, especially those who attended the testatrix, Mary F. Eason, and were with her considerably during her last illness, is entitled to great weight and is especially so in the case of the physician attending the testatrix through her last illness when the will was executed.' "

A comparison of the instruction given in *Eason* with that given in the instant case discloses the imperfection of the latter. We further note that Dr. Winston M. Bryant testified that he first saw Mrs. Knight on February 20, 1973, for swollen ankles and pain in her thigh; again on March 5, 1973, for pain in her knee; and on March 9, 1973, when he sent her to the hospital because she had been bleeding from one of her arteries. Dr. James L. Green had not seen Mrs. Knight for over five years prior to March 15, 1973, when she was admitted to the hospital. The weight to which the evidence of attending physicians is entitled necessarily depends upon a number of factors, including the opportunity they had to observe the patient, the interval of time during which they attended the patient, and the amount of time spent with the patient.

Since it cannot be said to what extent the jury may have been influenced by the instructions we find objectionable, we reverse and remand for a new trial.

*Reversed and remanded.*